# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DAVID STAMER, on behalf of himself and all others similarly situated | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 15-CV-08277<br>)<br>) Judge John J. Tharp, Jr. |
| SEAS & ASSOCIATES, LLC, ABC FINANCIAL SERVINCES, INC., BLAST FITNESS GROUP, LLC | )<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

David Stamer sued ABC Financial Services, Inc. ("ABC") and several other companies under the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, after he received robocalls regarding a debt he did not owe. Defendant ABC has moved to dismiss Stamer's First Amended Complaint on the grounds that the complaint "fails to set forth properly-supported allegations of liability against ABC and fails to make properly-supported allegations indicating that an ATDS and an artificial or prerecorded voice were used to place the calls at issue." Mot. at 1, ECF No. 52. Because the Court finds that Stamer has adequately alleged liability against ABC and a violation of the TCPA, the motion to dismiss is denied.

## BACKGROUND[1]

David Stamer began receiving debt collection calls in the summer of 2015 regarding a third party's delinquent fitness center membership because he was listed as the debtor's "emergency contact." Compl. ¶¶ 26-28. Stamer did not in fact owe the fitness center, Blast

---

[1] At the motion to dismiss stage, the Court accepts all facts alleged in the complaint and draws all reasonable inferences in favor of the plaintiff. *See Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015).

Fitness Group ("Blast"), any money and had not consented to receive calls from Blast or the other defendants in this case. *See id.* at ¶ 31-32. Stamer alleges that the calls he received were made "at the request of Blast and under the direction and control of ABC" by Seas & Associates using "an automatic telephone dialing system to place prerecorded robocalls" to his cell phone. *Id.* at ¶ 28. In his response to the motion, Stamer further alleges that all of Seas' collection calls are made through the Interaction Dialer, an autodialer.[2] *See* Pl.'s Resp. at 3, ECF No. 64.

According to the complaint, ABC "directed and controlled virtually the entire business of Seas," which shared ABC's clients, assets, equipment, and a physical address. Compl. ¶ 20-21. ABC paid a third party vendor to provide autodialers and then allowed Seas to use those autodialers to place robocalls. *Id.* at ¶ 22. At least some of the time, ABC receives part of the money collected by Seas. *Id.* at ¶ 23. In his response to the motion to dismiss, Stamer further alleges that ABC in fact created Seas and forwards it accounts for further collection efforts. *See* Pl.'s Resp. at 2. ABC allegedly controls Seas' accounting, hiring, and equipment. *See id.* at 2-3.

---

[2] ABC strongly objects to any consideration of the additional facts alleged by Stamer in his response. The Seventh Circuit, however, has clearly stated that "facts alleged by a plaintiff in a brief in opposition to a motion to dismiss may be considered when evaluating the sufficiency of a complaint so long as they are consistent of the allegations in the complaint." *Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015). The facts alleged by Stamer in his response, such as the brand of autodialer, the specific ways in which ABC and Seas share assets, and how ABC exerts control over Seas, are all consistent with his allegations in the complaint. Although ABC contends that alleging the use of an autodialer or prerecorded message is inconsistent with Stamer's statement that he told Seas they had the wrong number, the Court finds no such inconsistency. An autodialer can be used to connect a dialed number to a live employee once a person answers the phone, and Seas could have used prerecorded messages only if Stamer did not answer the phone. In fact, Stamer's response explains that this particular brand of autodialer plays a prerecorded message "to answering machines," suggesting he would have spoken to a real person if he had answered the phone. *See* Pl.'s Resp. at 4.

This is, moreover, a tempest in a teapot. Even were the plaintiff not permitted to "amend" his complaint with consistent allegations in his brief in opposition, the Court would provide him the opportunity to amend his pleading to add such allegations. The information the plaintiff has set forth is sufficient to establish a plausible claim for relief against ABC and, accordingly, that claim will be permitted to go forward and be tested on summary judgment and/or trial.

On or around August 4, 2015, Stamer told Seas to stop calling and that he was not the debtor. *See* Compl. ¶ 29. Seas marked the account as a "wrong number" but at least one more call was made to Stamer's cell phone after that date. *See id.* at ¶ 30. Stamer filed this lawsuit on September 21, 2015 and amended his complaint to include Blast and ABC on August 1, 2016 following discovery.

## DISCUSSION

ABC has moved to dismiss on two grounds. First, it argues that Stamer has failed to allege it is actually liable for the calls in question. Second, it argues that Stamer has failed to sufficiently allege an autodialer or prerecorded message in violation of the TCPA. A complaint requires only that a plaintiff "provide the grounds of his entitlement to relief" such that his claim rises "above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Detailed factual allegations are not necessary. *Id*. A bare recitation of the elements of a claim, however, is insufficient, as the plaintiff must provide sufficient facts to "state a claim to relief that is plausible on its face." *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009). For the reasons stated below, the Court finds Stamer has alleged sufficient facts to state a violation of the TCPA for which ABC could plausibly be liable.

### I. ABC'S Liability

Under the TCPA, it is unlawful for "any person" to "make any call" (with certain exceptions not relevant here) "using any automatic telephone dialing system or an artificial or prerecorded voice." 47 U.S.C. § 227(b)(1)(A). According to the allegations of the complaint, however, ABC didn't make the call – Seas did. Although this may seem dispositive, the FCC has held that third parties "may be liable for violations by its representatives under a broad range of agency principles," and that such "representatives" include hired telemarketers. *In re DISH Network, LLC*, 28 FCC Rcd 6574, 6584, 2013 FCC LEXIS 2057, *34 (F.C.C. 2013). The only

way in which this case differs from that of the usual seller-telemarketer relationship is that Blast (allegedly) hired ABC and ABC then directed Seas to engage in the relevant calls. This is a distinction without a difference, as the Supreme Court itself has recognized. *See Campbell-Ewald Co. v. Gomez,* 136 S. Ct. 663, 674 (2016) (recognizing vicarious liability for contractors whose subcontractors violate the TCPA).

ABC itself argues that "an agency relationship exists if the principal controlled or had the right to control" the agent, including the manner and means of the calls at issue. *See* Def.'s Mem. at 5-6 (citing *Thomas v. Taco Bell Corp.*, 582 F. App'x 678, 679 (9th Cir. 2014)). Stamer has alleged Seas placed the calls "under the direction and control of ABC." Compl. ¶ 26. Although this may be conclusory on its own, Stamer has also alleged that ABC is the company that forwards accounts to Seas for calling, that they share clients, facilities, assets, and equipment, and that ABC "controlled virtually the entire business operation of Seas." *See id.* at ¶¶ 19-21. Stamer has further alleged in his response that ABC trains Seas' employees, creates and implements Seas' policies and procedures, and purchases Seas' equipment. *See* Pl.'s Resp. at 3. The exhibits that Stamer included with his response brief provide further support, establishing that ABC created Seas as a debt collector specifically serving the health club industry by employing "a softer (kinder/gentler) approach" to debt collections. Seas' marketing materials, moreover, tout the close and integrated working relationship between ABC and Seas, through which ABC submits collection files to Seas when accounts are delinquent and with which it maintains "real-time integration." With all reasonable inferences taken in favor of the plaintiff, Stamer has plausibly alleged that ABC controlled Seas, including controlling the use of the autodialers ABC allegedly bought for Seas and trained Seas' employees to use in accordance

with ABC-written policies. These allegations are sufficient to plausibly allege vicarious liability. No more is required at this stage.

**II. Violation of the TCPA**

ABC's vicarious liability only matters if Stamer has sufficiently alleged the use of an autodialer or prerecorded message (either one is sufficient) in the first place. ABC argues that because the use of such techniques is an element of the claim, it cannot be alleged generally. *See* Def.'s Mem. at 11. There is a split within the courts of this district on whether alleging the mere use of the device is sufficient or whether the plaintiff must allege additional facts (such as the sound or content of the message). *See Izsak v. Draftkings, Inc.*, No. 14-CV-07952, 2016 WL 3227299, at *3 (N.D. Ill. June 13, 2016) (collecting cases). Stamer has alleged facts beyond the conclusory language of the statute, so he has stated a claim regardless of whether a bare allegation would have been sufficient. It is clear, for example, that Seas did, in fact, use autodialers in connection with its debt collection efforts (though not exclusively); its own marketing material describes that use. Further, Stamer has alleged that a specific type of autodialer (an Interaction Dialer) was used. *See* Pl.'s Resp. at 3. Stamer also explains how that specific dialer works, in that it can function as both an automated dialer and a predictive dialer and dials numbers from stored lists. *See id*. at 4. The Court does not find it necessary for Stamer to describe the calls in minute detail in his complaint (how long was the pause? Did he hear a click? Just how generic were these "prerecorded robocalls?") to allege plausibly that an autodialer was used. Further, knowledge that a specific piece of equipment was used is just as factually significant as a short delay or a clicking noise. Therefore, Stamer has made sufficient factual allegations to raise his claim that an autodialer was used above a speculative level.

Stamer has alleged sufficient facts to suggest ABC controls Seas and could be held vicariously liable for Seas' conduct. Furthermore, Stamer has sufficiently alleged facts that an autodialer was used in violated of the TCPA. Therefore, ABC's motion to dismiss is denied.

Dated: January 13, 2017

John J. Tharp, Jr.
United States District Judge